All right. I will next call the case of Dennis Godelia v. ZOLL Services. Please. Good morning. Good morning, Your Honor. May it please the court. My voice is gone, so I will try to save as much of it as I can. I'm Jermaine Lee for the appellants, and to my left is Eric Hernandez. He's just here to look beautiful. That's it. He's doing a good job. Before 2017 in Florida, courts incorrectly held that plaintiffs like Ms. Godelia who were injured by a defect in a medical device that was the result of a defendant's failure to comply with federal regulations could not sue the defendants because those plaintiff's claims were expressly and impliedly preempted by the medical device amendment. That was the law in Florida before 2017. That was the law that the defendants relied on in the district court to convince the district court as to why Ms. Godelia's claims should be dismissed. That was the only argument they made below. Now comes 2017, and as Judge Martin, you know, we had a sea changed, a correction of the law. In 2017, we had the opinion. I'd like to think that was the way it always was, but I understand the President was. Well, I agree that that's the way it was because that was the argument that I made that Florida had always gotten it wrong since 2013. But Judge Martin, in the opinion and Mink, corrected Florida about the state of the law and explained that plaintiffs now can pursue claims on medical device defect injuries provided they do two things. They assert common law duties, one, and two, they show that their injury that is under the pennant, that common law duty, was the result of a defendant's violation of a federal regulation. That's what you have to do to survive, express, and imply preemption. Ms. Godelia, in her complaint, and we'd studied the law. We expected that we would be here before the 11th Circuit when we filed a lawsuit. Ms. Godelia has pled the very claims that the court in the 11th Circuit and Mink said she's allowed to plead. Now, to give you a brief overview of what she's pled, she said she received a medical device from Zoll that was manufactured by Zoll, directly from Zoll. It had a defect. She alleged that that defect was caused by Zoll's failure to comply with several manufacturing required regulations. And the gist of those regulations are important because they say this is what Zoll was supposed to do before they shipped the medical devices. One, they're supposed to identify any existing and potential nonconformities, defects, with the devices before they send them out the door. That's the first thing they're supposed to do. The second thing they're supposed to do under the regulations in manufacturing these devices, they have to investigate the cause of those defects. And all of these things have to happen before they ship that device. Then, the key part is, once they figure out those existing and potential defects, they have to do the important thing that's important to the consumer. They have to fix them. Now, what we've alleged in the complaint is that that defect in the device that Ms. Godelia received, it occurred because Zoll failed to do these very things. They didn't inspect the existing defects with the devices. They didn't fix them. They didn't do anything. They sent them out. And they sent it out and Ms. Godelia received a defective device that didn't function the way they told her it would and she died. Her son and her husband got to witness her die. Now, given Mink, I was surprised, I expected that I would hear from Zoll that given the court's opinion in Mink that the district court be low-erred. And that's what I thought we would be here about. Or at least we wouldn't be here because it would be reversed. But what happened is the defendants raised some new arguments that they didn't raise below. And to the extent the court wants to address them, I will address them. But I don't think they should be addressed. Their only argument below was based on an incorrect law. What they argue now is that, and this is a new argument on appeal, that Ms. Godelia's claims should be expressly preempted and let me be clear, let's note something. They do not raise the implied preemption argument in light of the ruling in Mink. They focus on express preemption. And they say Ms. Godelia's claims are expressly preempted because she didn't use the magic word solely. She didn't say that her claims are based solely on violations, Zoll's violations of federal regulations. Well, I can assure you, just to be clear, that those are the only violations we've alleged because if we didn't, we wouldn't have briefed the issue that those are the exceptions to parallel claims. And I can stand on the record and say that we've only alleged that the defect was a result of Zoll's failure to comply with the regulations that the defendants acknowledge. We don't say anything else. And for the record, I want to be clear, we are not saying it's based on anything except violation of federal regulations. With respect to two of the claims, though, it seems, at least from my reading, that Zoll did make these arguments below. So, for example, they did make the so-called lack of privity argument with regard to your express warranty claim below. You think that was wrong, but it was raised below. Your Honor, Zoll actually didn't make the argument. What the court did is the court said there was a lack of privity. On appeal is when the issue came up. So Zoll did not make that argument below? No, Your Honor. That was a voluntary decision made by the district court where it said the claims are preempted and, by the way, there's a lack of privity. So Zoll did not make that argument. What we point out is that below the district court's argument was erroneous because it ignored the allegations. And the allegations, in this case, with how it works with Zoll with medical devices, yes, the device is prescribed by a doctor, but the doctor says, okay, you're a candidate for the device. What happens from there, there is privity. Zoll and the client, the patient, enters into a patient services agreement, which Zoll has produced in this case. And pursuant to that agreement, it outlines the terms of the party's relationship as to what happened. So Zoll didn't raise that argument below because they couldn't because they understand that there is privity because there's a contractual agreement between the plaintiff and Zoll. Let me ask you to turn to, before you run out of time, to negligent infliction of emotional distress. Florida law is a mess on this issue, and it has been for decades. And plaintiff's lawyers try to slide in at the cases at the margins in good faith on what constitutes a discernible physical injury, and defendants oppose it, and courts are sort of almost everywhere. What is the discernible physical injury in this case that lets you plead a negligent infliction of emotional distress claim under Florida law? Your Honor, if you look back at Zoll, which was from the Florida Supreme Court, where I think the court tried to answer that confusion created by the various district courts, we had the stomach pain. We had some issues with, I think, stomach pain and nausea and certain physical ailments. Now, what I think... But pain in and of itself can't be a discernible physical injury, right? Because pain is a manifestation of injury. Well, Your Honor, I understand that point. But you can have a stomach issue or stomach pain that can manifest into something else, right? You can have pain, and then you go to the doctor and you find out, well, that pain is actually an ulcer. Right. That ulcer is... What was it here? Well, in this case, Your Honor, we have... Well, you have to plead something. What did you plead? What we've pled is stomach pain. What we haven't done is, and I see where Your Honor is going, is we haven't said, okay, the stomach pain has manifested into an ulcer or something else to that effect. Well, maybe you should be given an opportunity for leave to amend. But if you say all you have is pain, but you have no idea where the pain is coming from, that may not be discernible physical injury, right? Your Honor, at that point, we were satisfied that based on what the law said or what the confusion of the state of the law was, that was sufficient. Now, to the extent that, yes, we are given the ability, we can give more details as to what that stomach pain has manifested into. And look, we have a Rule 11 obligation. If I consult with the client on amendment and they tell me, well, it hasn't manifested into anything or a physician says it's not, then I will gladly tell the court that we certainly would not do that if there's no physical manifestation of anything. But certainly, at the pleading stage, what we've done is we followed what Zell has said that we're supposed to do. And if you look at Zell, those are the very things we've alleged. So get back to the argument. The solely argument with Mink is essentially the defendant's attempt to elevate form over substance. They're saying because you don't say solely, you can't proceed. That's not what Mink says. Their next argument is there's no causal nexus between the violations of the regulations and the injury. We've explained that. The CFRs say you have to do certain things before you send Vest out. And we know, what we know is the court is not fully aware. We've learned in discovery that actually some of the problems with the Vest, because of these violations, are more egregious than what's outlined in the warning letter. Now that information was from the FDA. It's not before the court because no one had it before the case was filed. So there's certainly significant injuries. Now, they make one final point as to why, which is also a new argument, that we don't specify the defect. See, my time is up. I can address that. It's a new argument, but I could come back to it if it's needed. Yeah. You've got some rebuttal time, so we'll hear from you then. Good morning. I'm Alyssa Ryder from Wicker Smith on behalf of the Appalese. The argument this morning, the plaintiff seemed to think that this Mink case wins the war for them. But really, Mink was just perhaps success on a preliminary battle. And that battle was under Florida product liability law and federal law of preemption. Can you in Florida ever allege a parallel claim in a medical device case? And so yes, the plaintiff was able to win that first battle with this Mink case. But here's the war that needs to be fought, which is, are his claims nevertheless preempted? Or does this complaint set forth what it needs to under the standard in Mink, as well as the standard set by this court in the Willicke Gables case that was not overruled in Mink? Why isn't the easy answer to that question that he should be given an opportunity to file an amended complaint to see if he can satisfy Mink? Well, there's one easy answer to that, which is that they've never asked for leave. But they didn't ask because Mink came after. It'd be different if Mink was on the books at some time during the district court case, and they didn't see to take advantage of it. But Mink comes after the district court rules. And if you think that there's still more that they need to plead, more that they need to allege, why isn't the best option, even under your theory of the case, to let them do that on a remand? Well, I would just say procedurally that Mink came out before we filed our answer brief. We raised these issues. And in the reply, the plaintiff still has never asked this court for that relief, that they be given a chance to amend. And I would presume that that's because they've alleged what they can about their case. And on its face, it shows that what they've set forth cannot possibly be sufficient to evade preemption. Why? What have they missed? Okay, so this court... It's still notice pleading. Twombly didn't eliminate notice pleading. You don't need magic words all the time. So why haven't they pled a plausible claim that you caused them injury? And by the way, that preemption implied or expressed doesn't apply here under Mink. Well, I would say under Twombly, you need some facial plausibility that a claim, a viable claim exists. Well, they've certainly pled that they were injured by your product. That's an allegation that was made in the complaint. You don't dispute that part of it, right? There is a conclusory allegation that Mrs. Gedelia was injured by a defect. I would ask the court, what is that defect? You have to explain what the defect is in a complaint, in a product's liability action, where the defendant may have more of the information than you? Well, for one thing, when we're dealing with a PMA-approved device... That goes to the preemption issue. I'm asking you about causation and injury causation. Do you think that they have pled enough, putting preemption aside for the moment, under Twombly to plausibly plead that they were injured by your product and that your product was a cause of harm? If you look at the cases that they cite in their reply brief... I don't want the cases. I want to know whether you believe that they have adequately pledged defect, injury, and causation. Putting aside for a moment, we'll come back to it in a second, preemption. I think that they've made conclusory allegations that meet each of those elements, but I do think under Twombly, that if you're going to reach the level of plausibility of the claim, there needs to be something beyond just a bare conclusion. And then... So is that a no? What's that? Is that a no? You don't think they sufficiently pled that they were injured as a result of your product? I do think that they have alleged that, but I don't think that they have made sufficient allegations to make a plausible claim because we can't divorce our view of this from the fact that it is a medical device case and that it did go through the pre-market approval process. And so therefore, in order for them to state a viable claim, there has to be something on the face of the complaint that shows that it would not be preempted. Is there nothing in the complaint on the notice of violation or warnings that the company received from the FDA after the approval? Yes, there are about four paragraphs alleging four different general code sections. There's the predicate, right, for the plausible argument that the defects, that there are  Well, I would disagree with the court on that because here's the problem. There's no causation. There's no causal link. There's no nexus between those four sections that are cited, which are very general sections in the current good manufacturing practices regulations. These are things like, for example, one of them deals with that a member of the executive management team has to attend meetings. Yes, but others deal with the handling of complaints regarding failures of the product. Correct. So if those were not attended to, a failure may have persisted well after the company was on notice of it. And why, I mean, it seems to me that's the purpose of discovery to find out that sort of thing. But if the stand, well, let me just first say that there is nothing on the face of this that says that those four violations are actually causally related to any defect in the product. Well, I just don't see that. I mean, doesn't the complaint allege a warning letter to Zol that included a failure to document results for corrective and preventive actions as a result of a high noise artifact and or vibration causing the life vest device to inappropriately deliver shock treatment to patients? And didn't the complaint allege that she died because a shock treatment wasn't given? The complaint did allege the latter. However, what you just read to me was something in a warning letter regarding excessive shocks, providing shocks. No, they inappropriately deliver shock treatment to patients. That could be that it delivers them improperly, doesn't deliver them at all, or delivers them in not sufficient amounts to do any, to make any difference. It seems to me you're asking for an expert report on causation in a complaint to show facial plausibility. And I'm not sure that's what Twombly requires. I'm pretty sure it's not. Maybe if all they said was, there's a defect. My wife passed away and she had this device. Maybe that would be too conclusory. I'm with you there. But it seems to me at least that putting preemption aside for the moment, they've adequately alleged that a defect in your product specifically was involved in the chain of events that led to someone passing away. But I don't think you can put preemption aside if we're looking at a motion to dismiss on the basis of medical device amendment preemption. And the thing is that... Well, what have they missed in that respect? What have they not alleged? They have... What did they need to allege under Mink to get through a 12B6 motion? Well, Mink says that you can assert a common law cause of action that avoids preemption so long as there's a common law duty owed to the plaintiff. They did allege that. And the common law claim imposes only requirements that parallel federal requirements. And the violation of those federal requirements caused plaintiff's harm. So there's at least two things missing here. One is, despite counsel's representations today that he doesn't intend to litigate anything beyond the federal regulations. The face of the complaint does not exclude the possibility that the product could be found effective based on something other than federal regulations. That's the first thing. Then that means that any of those claims, should they later be asserted, are going to be preempted. But it doesn't mean the entire cause of action is preempted. Except for that the complaint needs to be narrowed down so that it meets the standard. Otherwise... Did you ask the district court to require re-pleading to narrow the complaint? Or did you move to dismiss in toto? We asked the court to dismiss it because the complaint pled only claims that were preempted. But let me just finish up the rest of your question before you ask, what didn't they do that Mink says you have to do? And the other thing is that you have to show that the violation of the federal regulations was the cause of your harm. We have no way of knowing from this complaint what the defect was. Maybe you can help me with this. So I'm reading from the complaint. I just picked paragraph 65. More specifically, Zoll manufactured the subject life vest in violation of the federal regulations noted above, which violations resulted in the subject life vest being manufactured with a defect that caused it to fail to properly detect and treat the defibrillation events experienced by Deborah Godelia on November 18th. What should that have said that it didn't say in your view? In my view, it should have relied on some particular federal regulation that is specifically linked to the problem. So for example, in the Wilicki-Gables case, the court said in that case, sorry, I have to look at the case itself. The court said in Wilicki-Gables, parallel claims must be specifically stated in the initial pleadings. And then this is a quote, a plaintiff must allege that the defendant violated a particular federal specification referring to the device at issue. Now in Mink, the court similarly said that the plaintiff may proceed on her claim, quote, so long as she claims the breach of a well-recognized duty owed to her under state law, and so long as she can show that she was harmed by a violation of applicable federal law. Now on the face of this complaint, we can't do either of those things. I mean, this actually segues to another point that I think is important to note, which is in the Mink case, the plaintiff alleged not only violations of these general CGMPs, but also that the specific PMA specifications for things like the hardness or the durability of the metal had been violated. And so you could look at the face of the complaint and have an idea, although maybe not every detail of it, but you had an idea of what the defect was and how it was that the violation of these federal specifications related to the device had caused the injury. On the face of it. So I guess just to go back to my question, in your view, you would have to designate a specific regulation that caused this injury? They have to give the citation to the regulation? Is that your... There has to be something. Either there has to be a specific defect alleged, and then perhaps in that case, you could rely on just these general CGMPs as a... Defect that caused it to fail to properly detect and treat the defibrillation event. Well, what the complaint alleges... What would you add? The result, right? The complaint says that there was a defect, and as a result of the defect, it didn't shock. But we have no idea what that defect was. Was there a bad battery? Was there a bad wires? Was there... You have to plead that too? You may not have to plead that level of detail in every case. If you have a particular... When it shouldn't have overturned, and people are injured, and there's a lawsuit filed, you have to get down into the nitty gritty and basically explain in minute detail exactly what the defect was and exactly how it went wrong before you can get past a 12B6 motion? If you are going to be faced with federal preemption, then you have to at least... Why is there a difference? Why are there different pleading rules in the preemption context that don't otherwise exist in products liability cases? Because you don't have a viable claim if your claim is preempted by the medical device. But there are a lot of defenses, federal defenses that are not preemption that eliminate a cause of action, and the Rule 8 pleading standards don't deviate from case to case. In some scenarios, you have to plead X or you have to plead Y, but you don't apply Rule 8 differently in these scenarios. I mean, the case that comes to mind is a case far removed from a products liability case, but the Supreme Court had a case called Leatherman decades ago, and federal courts were grafting on to Monell liability claims and civil rights actions, a standard that wasn't required by Rule 8, heightened pleading, and the Supreme Court basically told lower courts, listen, if that standard is not in the federal rules, you shouldn't graft it on. I don't understand why we're doing that here at the 12B6 stage. It's one thing for you to argue when you get to summary judgment. Listen, the way discovery has played out, they can't show this. They haven't been able to show that. They can't connect this dot with that dot, and therefore, they're preempted. I get that argument, but you're trying to say that they can't even go forward on a complaint until they have this really high level of specificity, and I'm not sure that that's warranted. But if that's the way the court rules, then essentially, you're telling every medical device manufacturer that they will never be able to dismiss a case on preemption grounds until they get to summary judgment stage. That's not true, because here, there are allegations about warnings from the FDA. There are references to the subpart of the federal regulation of the federal, Code of Federal Regulations, where the regulations that have been violated are in place. There's an allegation about the sort of problem that Zoll was alleged to have been having, and there's an allegation about why that defect may have caused the death. So this is not, at least in my personal view, a bare bones, boilerplate complaint. There's a lot more there, but maybe I'm wrong. Well, I would just, I see my time's up. I would just ask the court to, when it's deliberating about this case, to go back and take a look at the complaint and take a look at the warning letter, and I think that the court will see that there's nothing in the warning letter that syncs up with these allegations, and that the complaint leaves us to just basically guess at why any of these violations would have actually caused this problem. And I think it could be a good opportunity for the court to at least go back and look at this footnote three in Mink, where the CGMPs are referenced, and you'll see the cases that are cited in that footnote talked about that those courts had allowed a parallel claim to be alleged based on the violation of a CGMP because the particular CGMPs were not so vague as to make it unfair for the case to go forward. And our case is one where these CGMPs are so vague, and because there is so limited allegation as to what the defect might be, that it is unfair for the case to go forward. We understand your argument. Thank you very much. Thank you. Your Honor, I will go in reverse and be as brief as I can. Ms. Reiter said we didn't allege the specific PMA regulations. That was a debate that existed before Mink. And as Judge Martin, you know, in the footnote in Mink, it says that is not a requirement. In fact, if you read the express preemption statute, it says any regulation, not a PMA. So Mink has also resolved that issue and aligned itself with the various other circuits. Counsel also explained why Willicke-Gables was important. But as Mink observed in the Willicke-Gables case that came before the 11th Circuit, the plaintiff in that case never alleged any specific federal regulations that were violated. And that's why there was preemption. And we agree if a plaintiff does not allege specific federal regulations that were violated that caused the injury, those claims are preempted. That's what Willicke-Gables said. Willicke-Gables is not important here because we have outlined the specific regulations. Second, counsel said if you go back and study the warning letter, you can see that it only relates to certain injuries. Actually, what the warning letter explains is that it's only a snippet of the problems that were observed and more detailed problems are outlined in information that is produced in discovery that is not before the court, but we certainly have it. The warning letter clearly says this is just a snippet, not all of it. So counsel wants you to ignore whatever other problems exist and rely on this one snippet in the warning letter. I didn't think I needed to address this question, but regarding specific defects, I will. This court has an opinion, Bailey, that explains in product cases, you don't have to allege the defect. In this case, it's simple why. This is a medical device. Now, if we open the device before discovery, we would have some spoliation issues. And certainly, we were working out a protocol to open the device together so no one would have a spoliation issue. What counsel is saying is we should, without being able to open the device and figure out the problem, is tell them exactly what the problem is. That's what discovery is for. That's not what the plea is for. This is a point I didn't think I needed to address, but I heard Judge Jordan ask, what's the injury? Ms. Godelia is dead. I never asked the question in that way. I was tracing the defect to the injury, but I think I got from the complaint that she had passed away. Yes.  Sweet time. Thank you. That concludes our arguments for the week. We appreciate your presentation. And court is adjourned.